**William SAMPLE and Karen Sample, husband and wife, and James Shelton, Plaintiffs-Appellants/Cross-Appellees,**

v.

**Reginald JOHNSON, Deputy Commissioner for the Office of Worker Compensation Program for District 14, et al., Defendants-Appellees/Cross-Appellants.**

Nos. 84–4134, 84–4240.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 8, 1985.

Decided Sept. 20, 1985.

As Amended Oct. 22 and Oct. 25, 1985.

---

Scott E. Stafne, Stewart Jay, Seattle, Wash., for plaintiffs-appellants/cross-appellees.

Richard K. Willard, Acting Asst. Atty. Gen., Gene S. Anderson, U.S. Atty., John F.' Cordes, Mark W. Pennak, Dept. of Justice, Washington, D.C., for defendants-appellees/cross-appellants.

Richard M. Slagle, Williams, Lanza, Kastner & Gibbs, Seattle, Wash., for Seattle Stevedore Co., etc.

Before: PREGERSON and WIGGINS, Circuit Judges and SCHNACKE,* District Judge.

WIGGINS, Circuit Judge:

William Sample and James Shelton are longshoremen who seek to overturn the judgment of the district court that the government may take up to six months to conduct Longshoremen's and Harbor Workers' Compensation Act (LHWCA)[1] claim hearings and that § 919(c)[2] does not compel the government to reject an LHCWA claim or make an award within 20 days after notice if no hearing is held. They also seek a reversal of the judgment below ruling that there is no admiralty jurisdiction for their claims against their

---

\* Hon. Robert H. Schnacke, United States District Court Judge for the Northern District of California, sitting by designation.

1. 33 U.S.C. § 901, *et seq.*

2. That provision reads:

The deputy commissioner shall make or cause to be made such investigations as he considers necessary in respect of the claim, and upon application of any interested party shall order a hearing thereon. If a hearing on such claim is ordered the deputy commissioner shall give the claimant and other interested parties at least ten days' notice of such hearing, served personally upon the claimant and other interested parties or sent to such claimant and other interested parties by registered mail or by certified mail, and shall within twenty days after such hearing is had, by order, reject the claim or make an award in respect of the claim. If no hearing is ordered within twenty days after notice is given as provided in subdivision (b) of this section, the deputy commissioner shall, by order, reject the claim or make an award in respect of the claim.

employer and other "private" defendants and no general maritime law remedy for intentionally wrongful controversions of LHWCA claims. The government argues that since Sample and Shelton have been compensated, their claims are moot. We conclude that the district court erred in refusing to dismiss the claims against the government as moot but we affirm the dismissal of the claims against the employer.

## FACTS

The facts are not disputed. Sample was injured on March 28, 1983; Shelton was injured on April 26, 1982. Sample received compensation from Seattle Stevedore from April 8 to June 1, 1983. The employer controverted his claim on June 15, 1983 and a hearing was held before an ALJ on March 17, 1984. On April 24, 1984, Sample received an award of LHWCA compensation. Sample was without income during the more than ten months between the controversion and the award.

Shelton received compensation from the employer from April 27, 1982, but requested a hearing concerning the level of compensation on January 28, 1983. The employer controverted the claim and stopped payment on May 20, 1983. A hearing was held on October 27, 1983 and Shelton was awarded permanent partial disability on February 15, 1984. Almost nine months elapsed between controversion and award during which Shelton was without income.

In its first order, dated April 6, 1984, the district court granted summary judgment for Sample as to his claim that an ALJ must rule on a LHWCA claim within twenty days of a hearing (ER 32). In its second order, dated July 27, 1984, the district court denied the government's request for dismissal of the action as moot. It ruled that benefits must be awarded to a claimant, if

at all, within six months of controversion. The trial court also held that since the third sentence of section 919(c) is directory and not mandatory, the Deputy Commissioner of Labor need not reject the claim or make an award within twenty days of employer notice of the claim in cases where no hearing is held. In its third order, dated August 13, 1984, the court granted the private defendants' motion to dismiss all claims against them because the claims were not cognizable in admiralty, there is no private cause of action for violations of the LHWCA and the claims were barred by 33 U.S.C. § 905(a), the LHWCA exclusivity of remedies provision.[3]

## MOOTNESS

A moot action is one where the issues are no longer live or the parties lack a legally cognizable interest in the outcome. *Lee v. Schmidt-Wenzel and Harter,* 766 F.2d 1387, 1389 (9th Cir.1985). Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies. *Iron Arrow Honor Society v. Heckler,* 464 U.S. 67, 104 S.Ct. 373, 376, 78 L.Ed.2d 58 (1983). We apply a *de novo* standard for reviewing a district court's decision on subject matter jurisdiction, see *Fort Vancouver Plywood Co. v. United States,* 747 F.2d 547, 549 (9th Cir.1984) and, concomitantly apply that standard in reviewing questions of mootness.

Since hearings have been held for and awards made to Sample and Shelton, their declaratory and injunctive claims subsist only if this case involves claims that are capable of repetition with respect to those individuals. The government contends that because appellants have not shown that it is likely they will again be injured and make claims, the case against it is moot. Appellants retort that since the district court found that Sample had resumed

---

**3.** Section 905(a) states in pertinent part that
 The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee [except] if an employer fails to

secure payment of compensation as required by this chapter, an injured employee ... may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death.

working in the hazardous occupation of longshoreman, they continue to present viable claims against the government.

The Supreme Court early-on fashioned an exception to the general rule that where a court's decision will no longer have an impact on plaintiff, there is no case or controversy. In *Southern Pacific Terminal Company v. Interstate Commerce Commission*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911), the Court permitted review of an administrative order that prohibited for two years the continuing of a private agreement, even though the two years had expired. The Court recognized that questions involved in ICC proceedings are frequently repetitive, but that the agency's orders are often of short duration. Review could be had where there was injury that was "capable of repetition, yet evading review." *Id.* at 515, 31 S.Ct. at 283.[4]

The questions presented by appellants' claims against the government evade review. They concern twenty-day and six-month time-limits. There could never be a full adjudication that would inure to the benefit of a longshoreman who brought a similar challenge. In *Board of Education of Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176, 186 n. 9, 102 S.Ct. 3034, 3041 n. 9, 73 L.Ed.2d 690 (1982), where it was claimed that an individualized educational program (IEP) for a handicapped child for the school year 1978–79 was inadequate, the Supreme Court noted that "Judicial review invariably takes more than nine months to complete, not to mention the time consumed during preceding state administrative hearings." It held that the IEP's shortcomings were capable of repetition as to the parties before it, yet evaded review. *See also California Energy Resources Conservation and Develop-*

*ment Commission v. Bonneville Power Administration*, 754 F.2d 1470, 1473 (9th Cir.1985) ("short-term transactions ... can evade review in the sense that they can be completed in a shorter time than that required by the parties and this court to file, brief, argue, and decide a case").

 The question then is whether the practices to which appellants object are capable of repetition *as to them.* Where no class action has been instituted, the capable of repetition doctrine is applied only in exceptional situations where the plaintiff can reasonably show that *he* will again be subject to the same injury. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 108, 103 S.Ct. 1660, 1668, 75 L.Ed.2d 675 (1983) (unlikely that plaintiff will again be subject to police chokehold). That other persons may litigate a similar claim does not save a case from mootness. *Lane v. Williams*, 455 U.S. 624, 634, 102 S.Ct. 1322, 1328, 71 L.Ed.2d 508 (1982) (question whether defendant must be informed that guilty plea yields mandatory parole term is moot where sentence already served; petitioner now knows consequences of plea).

This rule is but a reflection of the Article III requirements of direct injury and a "personal stake" in the outcome. *See Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); 13A C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3531.12 at 60 (1984). Cases construing the "capable of repetition" rule are thus similar to standing cases. *See United States Parole Commission v. Geraghty*, 445 U.S. 388, 397, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980) ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)").[5]

---

**4.** The oft-cited doctrinal formula is found in *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975) (per curiam), where it was held that an injury is capable of repetition, yet evades review if: (1) the challenged action was of limited duration, too short to be fully litigated prior to its cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again. This formu-

lation is of relevance only in the absence of a class-action suit. *See Planned Parent. of C. & N. Ariz. v. State of Ariz.,* 718 F.2d 938, 949 (9th Cir.1983). Neither this case nor those discussed below involved class action.

**5.** Examples include *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) (no more than hypothetical possibility that plaintiffs' individual rights would be violated by un-

There has been scant analysis of what must be shown to establish that a plaintiff will likely be injured again. The Supreme Court has stated that plaintiffs must demonstrate that a "credible threat" exists that they will again be subject to the specific injury for which they seek injunctive or declaratory relief. *Kolender v. Lawson*, 461 U.S. 352, 355 n. 3, 103 S.Ct. 1855, 1857 n. 3, 75 L.Ed.2d 903 (1983). A "reasonable showing" of a "sufficient likelihood" that plaintiff will be injured again is necessary. *City of Los Angeles v. Lyons*, 461 U.S. at 108, 111, 103 S.Ct. at 1668, 1670. The "mere physical or theoretical possibility" of a challenged action again affecting a plaintiff is not sufficient. *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (not probable that conviction of one who attacked state's denial of bail for accused sex offenders will be overturned and he will again seek pre-trial bail). There must be a "demonstrated probability" that plaintiff will again be among those injured. *Weinstein v. Bradford*, 423 U.S. at 149, 96 S.Ct. at 348 (not shown that former prisoner probably would be among those deprived of parole procedures that he had sought).

The likelihood of the injury recurring must be calculable and if there is no basis for predicting that any future repetition would affect the present plaintiffs, there is no case or controversy. *Preiser v. Newkirk*, 422 U.S. 395, 402–03, 95 S.Ct. 2330, 2334–35, 45 L.Ed.2d 272 (1975) (prisoner's challenge to transfer from medium to maximum security prison moot because of re-transfer to medium security; any fear of returning to maximum security "remote and speculative"); *Wiggins v. Rushen*, 760 F.2d 1009, 1011 (9th Cir.1985) (possibility of being sent to maximum security unit "too speculative to rise to the level of reasonable expectation or demonstrated probability"); *SEC v. Medical*

*Committee for Human Rights*, 404 U.S. 403, 406; 92 S.Ct. 577, 579, 30 L.Ed.2d 560 (1972) (whether shareholders will again submit proposed corporate charter amendment to ban making of napalm too speculative to prevent mootness).

In some cases, it is virtually certain that the plaintiff would never again be affected by the practice that he challenged. *See, for example, DeFunis v. Odegaard*, 416 U.S. 312, 318–19, 94 S.Ct. 1704, 1706–07, 40 L.Ed.2d 164 (1974) (certain that plaintiff, who challenged admission policies of law school to which he was ordered admitted and from which he graduated, would never go through law school again); *Hall v. Beals*, 396 U.S. 45, 49, 90 S.Ct. 200, 202, 24 L.Ed.2d 214 (1969) (almost no chance that franchise residency statute that affected plaintiffs in 1968 election would also affect them in 1972); *Trustees for Alaska v. E.P.A.*, 749 F.2d 549, 556 (9th Cir.1984) (intervening change in legal standard moots claim of those challenging expired pollution discharge permits); *Wilson v. State of Nev.*, 666 F.2d 378, 381 (9th Cir. 1982) (disparate impact challenge to state high school diploma job requirement mooted by plaintiff's earning diploma); *Clancey v. Albert*, 600 F.2d 237, 238 (9th Cir.1979) (possibility too remote that constituent challenging bar against convicted and defeated Congressman voting until vindicated or reelected would again live in district with a criminal Congressman), *cert. denied*, 444 U.S. 916, 100 S.Ct. 230, 62 L.Ed.2d 170 (1979); *Friends of the Earth, Inc. v. Bergland*, 576 F.2d 1377, 1379 (9th Cir.1978) (defendant will not repeat exploration which plaintiffs sought to enjoin); *Chrisman v. Sisters of St. Joseph of Peace*, 506 F.2d 308 (9th Cir.1974) (woman who sought hospital sterilization sterilized elsewhere).

Other cases evince a strong probability that plaintiff might be affected more than

---

constitutional police action in future) and *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (discriminatory bail, sentencing and costs practices challenged; no standing because possibility that plaintiffs would later violate law too remote). These

cases require that a plaintiff establish his "personal stake" in injunctive relief by making "an essential showing of the likelihood of similar injury in the future." *LaDuke v. Nelson*, 762 F.2d 1318, 1324 (9th Cir.1985).

once by the questioned practice. *See, Kolender v. Lawson,* 461 U.S. at 355 n. 3, 103 S.Ct. at 1857 n. 3 (plaintiff stopped 15 times in two years pursuant to ordinance requiring identification by those who wander the streets); *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 603, 102 S.Ct. 2613, 2618, 73 L.Ed.2d 248 (1982) (assume major newspaper opposing statute banning press from trials involving sex offenses will again be subject to statute's strictures); *Gannett Co. v. DePasquale,* 443 U.S. 368, 377–78, 99 S.Ct. 2898, 2904–05, 61 L.Ed.2d 608 (1979) (expect major newspaper publishing company will again be affected by judicial refusal to open trial to press or provide transcript); *Securities and Exchange Commission v. Sloan,* 436 U.S. 103, 109 n. 5, 98 S.Ct. 1702, 1707 n. 5, 56 L.Ed.2d 148 (1978) (action against suspension of trading of stock not moot although no current suspension because SEC considers company chronic violator); *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 775, 98 S.Ct. 1407, 1415, 55 L.Ed.2d 707 (1978) (challenge to statute prohibiting expenditures by banks for referenda not moot, despite particular referendum's defeat, since it had been on the ballot four times before); *United States v. New York Telephone Co.,* 434 U.S. 159, 165 n. 6, 98 S.Ct. 364, 368 n. 6, 54 L.Ed.2d 376 (1977) (plain that telephone company will be subject to government orders to install pen registers in future); *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 547, 96 S.Ct. 2791, 2797, 49 L.Ed.2d 683 (1976) (order prohibiting entire press from reporting on confessions during "sensational" trial); *In Re Grand Jury Proceedings Klayman,* 760 F.2d 1490, 1492 (9th Cir.1985) (government will again call attorney to testify before new grand jury; attorney will again refuse to answer questions); *United States v. State of Or.,* 657 F.2d 1009, 1012 (9th Cir. 1981) (salmon fishing season over but Indians will want to fish next year and similar injunction will issue); *Thirteenth Guam Legislature v. Bordallo,* 588 F.2d 265, 266 (9th Cir.1978) (per curiam) (legislative session over but governor intends to use item veto in future sessions).

Many cases fall in between these two poles. In some instances, the action for declaratory or injunctive relief remained viable. *See Carroll v. President & Commissioners of Princess Anne,* 393 U.S. 175, 179, 89 S.Ct. 347, 350, 21 L.Ed.2d 325 (1968) (racists whose speeches restricted by county ordinance may again seek permit for rally); *Johansen v. San Diego County District Council,* 745 F.2d 1289, 1293 (9th Cir.1984) (unions and contractors will continue to have labor disputes and NLRB will likely continue to request short-term picketing injunctions); *N.A.A.C.P. Western Region v. City of Richmond,* 743 F.2d 1346, 1353 (9th Cir.1984) (Richmond police had killed five black men in three years, NAACP has interest in protest and no reason to believe that Richmond will refrain from enforcing the parade ordinance in the future); *Tyars v. Finner,* 709 F.2d 1274, 1280 (9th Cir.1983) ("definite likelihood" that plaintiff would again be involuntarily committed under challenged procedures because he was committed twice since first raising challenge); *Doe v. Gallinot,* 657 F.2d 1017, 1021 n. 6 (9th Cir.1981) (same; confined six times after complained-of commitment).

In other instances, there was "very little chance, much less a reasonable expectation" that a plaintiff would again be subjected to the act of which he complains. *Luckie v. E.P.A.,* 752 F.2d 454, 458 (9th Cir.1985) (for recurrence, residents would have to relocate atop another asbestos dump and again be subject to EPA regulatory scheme). *See also Lee v. Schmidt-Wenzel and Harter,* at 1390 (because vacancies on board of directors of bank now filled, "extremely unlikely" that dispute over whether vacancies must be filled by a majority of full board or could be filled by majority of quorum present at meeting would arise again); *Walker v. Huston,* 689 F.2d 901, 903 (9th Cir.1982) (release moots challenge to statute making rape offense nonbailable on appeal; no reasonable expectation that petitioner would again be convicted of rape and denied bail); *California Hospital Ass'n v. Obledo,* 602 F.2d

1357, 1359 n. 2 (9th Cir.1979) (unlikely that state will issue another order freezing interim hospital reimbursement payments); *United States v. State of Washington, Department of Fisheries,* 573 F.2d 1118, 1120 (9th Cir.1978) (unlikely that now-rescinded regulations covering Indian fishing rights will be reissued; issuing agency no longer has jurisdiction over Indians); *Williams v. Alioto,* 549 F.2d 136, 144 (9th Cir.1977) (since murders solved, no cognizable danger or reasonable expectation that policy of detaining black males in connection with "Zebra" killings would recur); *Wilson v. Webster,* 467 F.2d 1282, 1283 (9th Cir.1972) (improbability of further campus uprisings moots challenge to related ordinance); *Halvonik v. Reagan,* 457 F.2d 311, 313–14 (9th Cir.1972) (unlikelihood of future riots moots challenge to California loitering and assembly regulations).[6]

There are a few generalizations that might be extracted from the cases concerning capability of repetition. The principal tendency to emerge is the necessity for plaintiffs to show a likelihood that *they* will be affected again by that which they challenge. A decade ago, when there had as yet been little development of the case law, commentators could argue with some authority that judicial economy or the importance of the question presented may outweigh the need for showing anything more than the "mere possibility" that plaintiff had a continuing personal stake in securing injunctive or declaratory relief. *See* D. Kates, W. Barker, *Mootness in Judicial*

*Proceedings: Toward a Coherent Theory,* 62 Cal.L.Rev. 1385, 1418–25 (1974); Note, *The Mootness Doctrine in the Supreme Court,* 88 Harv.L.Rev. 373, 388 (1974). Cases such as *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), and *LaDuke v. Nelson,* 762 F.2d 1318 (9th Cir.1985), make it clear that, no matter how important the issue or how likely that a similar action will be brought, a court is without jurisdiction if there is not a sufficient likelihood of recurrence with respect to the party now before it.

Another tendency that emerges is that of placing the burden for showing a likelihood of recurrence firmly on the plaintiff. For example, in *United States v. W.T. Grant,* 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953), the Court held that an injunction case was not moot simply because the defendant had ceased the challenged practice unless *the defendant* could show that there was "no reasonable expectation" that the practice would be resumed. Thirty years later, *Lyons* is replete with statements emphasizing that it is *plaintiff*'s burden to show the likelihood of recurrence. 461 U.S. at 101–02, 103 S.Ct. at 1664–65 ("[t]he plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct"); 461 U.S. at 109, 103 S.Ct. at 1669 ("the named plaintiff [must] make a reasonable showing that he will again be subjected to

6. Several cases have simply ignored the necessity of determining whether there will likely be a repetition of the injury in question. *See, for example, Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 125–26, 94 S.Ct. 1694, 1699–1700, 40 L.Ed.2d 1 (1974) (strike over but action against strikers receiving welfare not moot because state policy is fixed; no discussion of probability of another strike against plaintiff-employer); *Roe v. Wade,* 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973) (attack on abortion laws not moot despite plaintiff no longer being pregnant and giving no indication that she will again become pregnant and seek abortion); *Dunn v. Blumstein,* 405 U.S. 330, 333 n. 2, 92 S.Ct. 995, 998 n. 2, 31 L.Ed.2d 274 (1972) (even though plaintiff now eligible to vote, challenge to durational residency requirement al-

lowed because others still affected); *Moore v. Ogilvie,* 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969) (election over but challenge to nominating petition procedure will proceed because of "continuing controversy in the federal-state area"); *Allen v. Monger,* 583 F.2d 438, 440 (9th Cir.1978) (action by now-discharged sailors who served aboard now moth-balled ship to enjoin regulation prohibiting petitioning of Congressmen not moot because "serious questions raised"), *vacated,* 444 U.S. 1063, 100 S.Ct. 1003, 62 L.Ed.2d 745 (1980); *Webster v. Mesa,* 521 F.2d 442, 443 (9th Cir.1975) (action against law prohibiting voter who has signed partisan candidate's petition from also signing independent's petition for same office not moot despite end of petitioning period).

the alleged illegality"). *See also Lee v. Schmidt-Wenzel and Harter,* at 1390 ("the plaintiffs have the burden of showing that there is a reasonable expectation that they will once again be subjected to the challenged activity") (citation omitted). A plaintiff's burden can not be met with a merely subjective showing. *Id.* ("Speculative contingencies afford no basis for finding the existence of a continuing controversy between the litigants as required by article III"). An attestation of plaintiff's fear that the injury might recur will not suffice to demonstrate the capability of repetition of an injury. *See Preiser v. Newkirk,* 422 U.S. at 402–403, 95 S.Ct. at 2334–2335. Whether the standard is that of a "credible threat", a "reasonable showing" of a "sufficient likelihood", or a "demonstrated probability", the "essential showing" is objective, i.e. directly or inferentially statistical. *See* D. Barnes, *Statistics as Proof: fundamentals of quantitative analysis* 31–35 (1983) (statistical inferences). The subject matter involved will facilitate precise prognostication in some cases and hamper it in others, as the categorization of cases illustrates. However, there are many instances in which prediction, while not simple, is quite possible. For example, in *Johansen v. San Diego County District Council,* 745 F.2d 1289 (9th Cir.1984), the union presumably could have offered statistics on the frequency of its engaging in secondary picketing, in order to show that it was likely that it would again picket and the NLRB would again seek a short-term injunction.

The instant matter is the paradigmatic case for a statistical showing of likely recurrent injury. Here, the predicate to a claim is a physical injury. There are few occurrences that are more assiduously recorded than physical injuries. Without such records, of course, no actuarial table could be constructed and insurance rates could not be fixed. There are many likely sources for establishing the probability that a longshoreman will be seriously injured, including insurance carriers, the De-

partment of Labor and both the employers and unions. With such statistics, a prediction could be made as to whether one with the same work-life expectancy as Sample is likely to experience another claimable injury.

The cases have also not indicated what *degree* of probability is required where a plaintiff can show a likely recurrence of injury. Query whether the test should be one of more likely than not, i.e. in instances reducible to percentages, more than fifty-fifty, or whether the test should be one where probability, in the strict sense, is not required, but merely some significant possibility. The language found in the cases discussed above, particularly in *Weinstein* ("demonstrated probability"), militates in favor of a "more likely than not" standard.[7] However, because the conceptions of probability that have arisen in jurisprudence and in other branches of learning have far from achieved a perfect congruence, see D. Kaye, *Statistical Significance and the Burden of Persuasion,* 46 Law & Contemp.Probs. 13 (1983), we prefer to describe "probability" qualitatively, as requiring a very significant possibility, and not quantitatively, as mandating a "greater than fifty percent" likelihood. *See* M. Victor, *Using Decision Analysis to Assist Litigation Strategy,* 40 Bus.Law. 617, 625–26 (1985) (qualitative v. quantitative descriptions of probability).

■ The district court here simply noted that Sample had returned to work in a hazardous occupation. That level of generality is insufficient to establish that serious injury will probably recur to Sample. Plaintiffs failed to meet their burden of demonstrating the probability of recurrence. Accordingly, the district court should have dismissed the claims against the government as moot.

## ADMIRALTY JURISDICTION

■ Hoping to recover punitive damages, appellants alleged that bad faith ac-

---

**7.** The only federal court to define the term "probable" conceived of it as "more than 50 percent of actual." *Price v. Neyland,* 320 F.2d 674, 678 (D.C.Cir.1963).

tions by the private defendants caused them injuries apart from those covered by the LHWCA. They claimed that the private defendants controverted their claims despite knowledge that the workers were entitled to compensation. Defendants successfully moved to dismiss pursuant to Fed.Rules Civ.Proc.Rule 12(b)(6). The district court held that admiralty jurisdiction, 28 U.S.C. § 1333, was wanting because the intentional violations did not occur over water and were unconnected with traditional maritime activities. *See Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 253, 268, 93 S.Ct. 493, 497, 505, 34 L.Ed.2d 454 (1972). Questions of jurisdiction are reviewed *de novo. Fort Vancouver Plywood Co.*, 747 F.2d at 549.

Appellants admit that the failure to pay benefits prior to a compensation hearing occurred on land and that the wrongful controversion bore no relationship to a traditional maritime activity. They nevertheless argue that the *Executive Jet* test is inapplicable because it does not restrict admiralty jurisdiction when the claim is founded upon a maritime statute, the LHWCA, citing *Director, Office of Workers' Compensation Programs v. Perini North River Associates*, 459 U.S. 297, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983).

Neither that case, nor others cited by appellants, involved the use of admiralty jurisdiction coupled with an LHCWA claim. *Perini* decided that a construction worker, injured while performing his craft for a construction company on a river barge used for the construction of a sewage treatment plant, was engaged in maritime employment and could, therefore, make an LHWCA claim.[8] The other cases cited do not involve the LHWCA.

That Congress created statutory obligations under the LHWCA, pursuant to its maritime powers, does not mean that admi-

ralty jurisdiction automatically attaches where a claim is made under the statute. *Myhran v. Johns-Manville Corp.*, 741 F.2d 1119, 1122 (9th Cir.1984) is instructive in that regard. There, a pipefitter was injured by asbestos while repairing and renovating vessels on navigable waters. He filed a products liability action against the manufacturers of asbestos products. Judge Hug noted that the Supreme Court's understanding of the history of admiralty jurisdiction

suggests that admiralty law is not concerned with tort claims such as those of Myhran. None of the issues listed by the Supreme Court in *Executive Jet* are involved in Myhran's suit. Rather, as the Eleventh Circuit observed in a case factually similar to this case, 'the issues that this litigation presents are identical to those presented in countless other asbestos suits; they involve questions of tort law traditionally committed to local resolution'. *Harville v. Johns-Manville Products Corp.*, 731 F.2d 775, 786 (11th Cir.1984). Resolution of Myhran's tort claims does not require the special expertise of a court in admiralty as to navigation or water-based commerce, nor is there any federal interest in uniformity of decision requiring the application of federal substantive law (citation omitted).

 The district court was thus correct in viewing the intentional harm claim as involving little more than the state law tort of intentional infliction of emotional distress and not an admiralty claim at all.

## THE COMMON LAW AND STATUTORY EXCLUSIVITY OF REMEDY

The district court, citing *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), held that an injured longshoreman had no "private right of action" to sue for damages in excess of those prescribed by the

---

**8.** Appellants also rely upon *Crowell v. Benson*, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932), for the notion that a court that treats an LHWCA claim is exercising its admiralty jurisdiction. In that case, Chief Justice Hughes mentions that claims subject to the LHWCA are "governed by the maritime law as established by

the Congress and are within the admiralty jurisdiction," but only in the context of discussing whether they implicated a right to trial by jury. *Id.* at 45, 52 S.Ct. at 290. Nothing in that case indicates that an injury giving rise to an LHWCA claim carries the general admiralty law in its wake.

LHWCA where the alleged damages were related to sections 907 and 908 of the Act.[9] Appellants assert that in contrast to the claims dealt with in *Cort* (a stockholder's derivative suit against officials who had violated federal election laws by expending their corporation's funds for advertising in the 1972 Presidential elections), they have sued the private defendants under a body of federal common law where federal courts are permitted to create remedies, i.e. maritime law.

The private defendants answer that there is no federal common law. This is, of course, inaccurate. There may be "no federal general common law," *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), but federal common law exists where a federal rule of decision is "necessary to protect uniquely federal interests", *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 426, 84 S.Ct. 923, 939, 11 L.Ed.2d 804 (1964) or where Congress has given the courts power to develop substantive law. *Wheeldin v. Wheeler,* 373 U.S. 647, 651, 83 S.Ct. 1441, 1445, 10 L.Ed.2d 605 (1963). *See also* Note, *The Federal Common Law,* 82 Harv. L.Rev. 1512 (1969). The general maritime law is probably the most ancient body of federal common law. *See Edmonds v. Compagnie Generale Transatlantique.,* 443 U.S. 256, 259, 99 S.Ct. 2753, 2755, 61 L.Ed.2d 521 (1979). It has been specifically held that general federal maritime law is a source of relief for a longshoreman's personal injury. *Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 412–14, 74 S.Ct. 202, 206–208, 98 L.Ed. 143 (1953).

Supreme Court cases provide several examples of the creation of remedies under general maritime law for nonpecuniary damages that supplement federal maritime statutory remedies. In *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), a longshoreman's widow sued for the wrongful death of her husband. She joined claims of negli-

gence and unseaworthiness under the general maritime law. The Court held that a common law cause of action for wrongful death lies, even though federal statutes have sought to create a uniform remedy for negligently-caused deaths, because additional, nonstatutory federal remedies would create uniformity by substituting for the patch-work of state wrongful death laws. 398 U.S. at 400–01, 90 S.Ct. at 1787–88. In *Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 583, 94 S.Ct. 806, 814, 39 L.Ed.2d 9 (1974), the Court, in allowing for suit by the widow of a longshoreman who had recovered damages for his injuries prior to work-related death, stated that *Moragne* created a wrongful-death remedy independent of any action that the decedent during his lifetime may have had for his own personal injuries. Finally, in *American Export Lines, Inc. v. Alvez,* 446 U.S. 274, 283, 100 S.Ct. 1673, 1678, 64 L.Ed.2d 284 (1980), the Court held that the wife of a harbor worker injured aboard a ship on state territorial waters could maintain a general maritime action for damages for the loss of her husband's society.

While all of these cases implicated longshoremen or harbor workers, none of these cases involved an action under the LHWCA. Moreover, other cases have not shown a similar readiness to create general maritime nonpecuniary damage remedies. In *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978), the Court construed the Death on the High Seas Act (DOHSA), 46 U.S.C. § 762, as forbidding general maritime law supplementation of the elements of compensation provided for by that Act. DOSHA expressly limits a decedent's survivors' recovery to their "pecuniary loss" and hence additional damages for nonpecuniary losses could not be had. Distinguishing *Moragne* and *Gaudet,* Justice Stevens stated that "There is a basic difference between filling a gap left by Congress' si-

---

**9.** The former provision covers the employer's responsibility for furnishing the injured worker with medical services and supplies, while the latter provision covers compensation for disability.

1346

lence and rewriting rules that Congress has affirmatively and specifically enacted." *Id.* at 625, 98 S.Ct. at 2015; *see also Beltia v. Sidney Torres Marine Transport, Inc.,* 701 F.2d 491 (5th Cir.1983) (suits for loss of society based upon negligence not maintainable because Jones Act does not permit supplemental recovery for that injury, but such recovery possible where general maritime claim for unseaworthiness is also brought).

While Congress did not expressly preclude the creation of a common law remedy for wrongful controversion, the remedies that it has made available for use against employers who act in bad faith bear on the question of whether federal courts ought to create the general maritime law remedy sought here. As the Court noted in *Moragne,* 398 U.S. at 407, 90 S.Ct. at 1791, the LHWCA's

> principles of recovery are wholly foreign to those of general maritime law—like most workmen's compensation laws, it deals only with the responsibilities of employers for death or injury to their employees, and provides standardized amounts of compensation regardless of fault on the part of the employer.[10]

The LHWCA's exclusivity of remedies provision, 33 U.S.C. § 905(a), states that "The liability of an employer prescribed in [this title] shall be exclusive and in place of all other liability of such employer." LHWCA liability occurs for "accidental injury or death arising out of and in the course of employment." 33 U.S.C. § 902(2). Thus, the employer is not liable under the LHWCA for intentional injuries that it causes and section 905(a) is not applicable to claims concerning such injuries. However, the term "intentional" is construed very strictly where a workers'

compensation statute exists. As Professor Larson, 2A Larson *Workmen's Compensation Law* § 68.13 at 13–8—13–9 (1984), explains

> Since the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, the common-law liability of the employer cannot, under the almost unanimous rule, be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury.

A number of district courts have applied this principle in LHWCA cases. *See Houston v. Bechtel Assoc. Professional Corp.,* 522 F.Supp. 1094, 1096 (D.D.C. 1981) ("Nothing short of specific intent to injure the employee falls outside the scope of § 905(a). Absent such specific intent, the employee is foreclosed from maintaining a tort action against his employer") and cases cited therein.[11] The employee must, of course claim that the employer deliberately intended to injure him. *Austin v. Johns-Manville Sales Corp.,* 508 F.Supp. 313, 317 (D.Me.1981). The courts have adhered to this rule because they recognize, as did Congress when amending the LHWCA in 1972, that the LHWCA "operates like ordinary workmen's compensation and operates on a percentage of the earnings of an individual rather than reimbursing him for his actual injury, and puts a lid on his recovery." 118 Cong.Rec. 36383 (1972) (remarks of Rep. Eckhardt). However, the courts also recognize that without such a rule, punitive damages might be awarded for insufficiently egregious acts.

10. *Moragne* was, of course, handed down before the 1972 amendments to the LHCWA. However, these amendments were chiefly for the purpose of *strengthening* the exclusivity of LHCWA remedies. *See Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 261–62, 97 S.Ct. 2348, 2356, 53 L.Ed.2d 320 (1977); S.Rep. No. 1125, 92d Cong., 2d Sess. 4 (1972), U.S.Code Cong. & Admin.News 1972, p. 4698.

11. Among these cases is an LHCWA matter in which Judge Orrick noted that "Under workers' compensation statutes, the exclusive liability protection afforded to the employer cannot be pierced if the employee's injury is caused by the employer's negligence, or any other misconduct short of genuine intentional injury." *Baker v. Pacific Far East Lines, Inc.,* 451 F.Supp. 84, 95 (N.D.Cal.1978) (footnotes omitted).

*See Houston,* 522 F.Supp. at 1097 (for punitive damages, tort must be aggravated by evil motive, actual malice, deliberate violence or oppression).[12] Here, the complaint does not allege that plaintiffs suffered severe emotional distress or that it was inflicted intentionally, let alone with actual malice. *See* ER 5–7.

Professor Larson has considered the attempts in worker's compensation cases to create a cause of action for intentional injury by an employer who has delayed or terminated payment or treatment. *See* 2A Larson *Workmen's Compensation Law* § 68.34(c) (1984). He has concluded that

> The temptation to shatter the exclusiveness principle by reaching for the tort weapon whenever there is a delay in payments or a termination of treatment is all too obvious, and awareness of this possibility has undoubtedly been one reason for the reluctance of courts to recognize this tort except in cases of egregious cruelty or venality.

*Id.* at 13–76.

One such case, in which the employer's conduct was "conspicuously contemptible" was *Martin v. Travelers Ins. Co.,* 497 F.2d 329 (1st Cir.1974). Plaintiff had received LHWCA compensation in the form of three drafts, which he deposited and drew upon. The defendant insurance company, deciding to appeal, stopped payments on the draft, causing plaintiff financial hardship and emotional distress. Reversing the district court's dismissal, Judge Coffin, in an opinion free of citation to authority, concluded that where a carrier deliberately stops payments already made, when it should have known that acute harm might follow, the exclusivity provision and the fact that the LHWCA contains a penalty for late payment do not bar an action.

In any event, cases involving ordinary refusal to pay are *contra.* The bulk of authority in cases involving ordinary refusals to pay is *contra.* One reason is that most worker's compensation statutes, like the LHWCA,[13] have penalty provisions for wrongful failure to pay. *See* Annot., 8 A.L.R.4th 902, 904 (1984). In states where no such penalty provision exists, there are often explicit provisions stating that non-statutory remedies are not barred when there is a refusal to pay. *See, for example, Hollman v. Liberty Mut. Ins. Co.,* 712 F.2d 1259, 1261 (8th Cir.1983) (South Dakota).

In this case, Shelton was awarded almost $6,300 in attorney's fees and prejudgment interest and received compensation for the "mental health sequelae" that flowed from his physical injury. Even if the exclusivity provision of the LHWCA is not read to bar the putative cause of action for wrongful refusal to pay, the penalty provision should serve the same purpose. While it may be that the penalty provisions are inadequate to fully compensate a worker who has been harmed by an employer's refusal to pay when due, the problem requires a political solution. *Goetz v. Aetna Cas. and Sur. Co.,* 710 F.2d 561, 564 (9th Cir.1983).

## CONCLUSION

The claims against the government are moot. The district court correctly dismissed the claims against the private defendants.

AFFIRMED IN PART and REVERSED IN PART.

---

**12.** Punitive damages are awardable, in some circumstances, to a seaman where payment for maintenance and cure is wrongfully denied. *See Tullos v. Resource Drilling, Inc.,* 750 F.2d 380, 388 (5th Cir.1985). However, the very existence of separate acts for seamen and longshoremen—the Jones Act and the LHWCA, respectively—suggest that the two categories of workers are not to be assimilated in all respects.

**13.** Sections 914(e) and (f) increase the amount of compensation due by ten or twenty percent for overdue installment payments payable without or with an award respectively; section 928 allows for attorneys fees if the employer declines to pay compensation and an award is subsequently made and section 907(d) allows for recovery for medical expenses when the employer refuses to furnish them. *See also* Ann., 49 A.L.R.Fed. 425 (1984).