**LONE ROCK TIMBER CO., an Oregon corporation; D.R. Johnson Lumber Co., an Oregon corporation; Spalding & Son, Incorporated, an Oregon corporation; Scott Timber Co., an Oregon corporation; and Burrill Timber Co., an Oregon corporation, Plaintiffs,**

**v.**

**UNITED STATES DEPARTMENT OF INTERIOR; Bruce Babbitt, Secretary of United States Department of Interior; United States Fish and Wildlife Service; Marvin Plenart, Regional Director, United States Fish and Wildlife Service; United States Bureau of Land Management; Dean Bibles, Regional Director, United States Bureau of Land Management, Defendants.**

**Civ. No. 93–927–AS.**

United States District Court,
D. Oregon.

Jan. 20, 1994.

Scott W. Horngren, Michael E. Haglund, Haglund & Kirtley, Portland, OR, for plaintiff.

Thomas C. Lee, U.S. Attorney's Office, Portland, OR, Jean E. Williams, U.S. Dept. of Justice, Resources Div., Washington, DC, for defendants.

## OPINION

ASHMANSKAS, United States Magistrate Judge:

Plaintiffs are timber companies who submitted the winning bids on certain timber sales offered by the Bureau of Land Management ("BLM") in FY 1990 and 1991. They seek declaratory and injunctive relief against the BLM and United States Fish and Wildlife Service ("FWS") with respect to alleged violations of the interagency cooperation provisions of the Endangered Species Act ("ESA"), 16 U.S.C. § 1531, 1536, and the implementing regulations for that section, 50 C.F.R. Subpart 402, and alleged violations of BLM regulations governing the sale of timber, 43 C.F.R. Part 54.

## BACKGROUND

A federal agency must ensure that any action it authorizes, funds, or carries out is not likely to jeopardize the continued existence of any endangered or threatened species or result in the destruction or adverse modification of critical habitat of such species. 16 U.S.C. § 1536(a)(2). When a federal agency proposes to take an action that may affect a threatened or endangered species or its critical habitat, that agency must consult with the FWS and obtain a biological opinion from the FWS as to whether the proposed action is likely to result in a violation of the ESA. *Id.*, 50 C.F.R. Subpart 402. Although the agency is technically not bound by findings of the FWS biological opinion, *Sierra Club v. Marsh*, 816 F.2d 1376, 1386 (9th Cir.1987), courts give great deference to the expertise of the FWS on these issues, and an agency that attempts to proceed with an action in the face of a critical FWS biological opinion will almost certainly be found to have acted arbitrarily and capriciously and contrary to law. *See, e.g., Hill v. TVA*, 549 F.2d 1064, 1070 (6th Cir.1977), *aff'd*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978).

Nine of the timber sales at issue here are part of the BLM's FY 1990 timber sale program. On July 18, 1990, the BLM initiated consultation on the FY 1990 timber sale program. Five days later, the northern spotted owl was listed as a threatened species. The FWS issued a draft biological opinion on August 17, 1990, and a final "no jeopardy" biological opinion on November 23, 1990. Subsequently, the BLM obtained new information suggesting the proposed actions would have an adverse affect upon the northern spotted owl. By law, the BLM was required to reinitiate consultations. 50 C.F.R. § 402.16(b). Accordingly, on March 20, 1991, the BLM modified and resubmitted for individual consultation some of the FY 1990 sales, including the nine sales at issue here. On September 19, 1991, the FWS issued final "non-jeopardy" opinions for five of the sales at issue here, but reportedly deferred issuance of final opinions for the other four sales at the request of the BLM.

On February 14, 1992, the FWS designated critical habitat for the northern spotted owl, an event that required a new round of consultation. 50 C.F.R. § 402.16. The parties dispute the date on which this new round commenced. Plaintiffs assert the crucial date is January 23, 1992, when the BLM sent a letter to the FWS requesting the initiation of formal consultation. Defendants assert the letter was defective because it omitted much of the information required by 50 C.F.R. § 402.14(c), and formal consultation therefore did not commence until April 29, 1992, when the BLM finally supplied the requested information.

Effective September 28, 1992, the Washington, Oregon, and California populations of the marbled murrelet were listed as a threatened species. Only five of the nine sales were in areas that might contain marbled murrelets. Consultation on those sales was commenced December 9, 1992. On December 17, 1992, plaintiffs gave formal notice of their intent to file suit against the FWS to force completion of the consultation process. That lawsuit was filed on July 28, 1993. Final biological opinions in those nine sales were issued no later than September 3, 1993 (there is some dispute over the precise date of one of the opinions).

In addition to the nine FY 1990 sales, the BLM and FWS were consulting on a number of FY 1991 timber sales, including six at issue here. The BLM initiated consultation on these sales regarding the listing of the spotted owl on February 4 and March 4, 1991. That consultation was completed on June 17, 1991. As with the FY 1990 sales, a new round of consultation was initiated in 1992 to address the impact of those sales upon critical habitat for the owl. The parties similarly dispute whether formal consultation commenced on January 23 or April 29, 1992. A final biological opinion was issued on September 22, 1993, with respect to three of the sales. The BLM elected to withdraw the other three sales from consultation.

The original complaint asked this court to either (a) declare the FWS lacked jurisdiction to continue consultation and order the BLM to award the sales to plaintiffs, or (b) to compel defendants to terminate consultation and issue the biological opinions. Plaintiffs also sought declaratory relief establish-

ing time limits upon the length of consultation, and a declaration that the FWS violated 50 C.F.R. § 402.14(g)(5) by failing to discuss certain information with plaintiffs prior to issuing the draft biological opinion.

After the FWS issued the biological opinions, plaintiffs filed an amended complaint seeking additional relief including an order declaring the biological opinions void, declaratory relief establishing procedures to be used in preparing the biological opinions, and other relief to address an assortment of grievances against the BLM and the FWS. Plaintiffs move for summary judgment. Defendants move to dismiss on jurisdictional grounds, or in the alternative for summary judgment. Plaintiffs also seek leave to file a second amended complaint.

## DISCUSSION

### 1. *Mootness:*

Plaintiffs originally brought this action to compel the FWS to issue biological opinions on specific timber sales. Since the opinions have now been issued, those claims are moot. There is no point in my ordering the FWS to perform an act that has already occurred. Plaintiffs also seek declaratory relief establishing time limits upon the length of consultation, and requiring the FWS to obtain plaintiffs' consent to extend those deadlines, but since there is presently no dispute between the parties such a declaration would constitute an advisory opinion which federal courts lack jurisdiction to issue. *Church of Scientology of California v. United States,* —— U.S. ——, ——, 113 S.Ct. 447, 449, 121 L.Ed.2d 313 (1992).

Plaintiffs contend this case presents one of the "exceptional situations where the plaintiff can reasonably show that he will again be subject to the same injury". *Sample v. Johnson,* 771 F.2d 1335, 1339 (9th Cir.1985) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)), *cert. denied,* 475 U.S. 1019, 106 S.Ct. 1206, 89 L.Ed.2d 319 (1986). I disagree. There is no

possibility the FWS will again fail to issue these particular biological opinions for these particular timber sales. In theory, the FWS could someday fail to timely issue biological opinions for some other timber sale in which plaintiffs have an interest, but that is little more than speculation.[1] By contrast, in most of the cases upon which plaintiffs rely the controversy was one likely to be repeated, often at predictable intervals. *See, e.g., Greenpeace Action v. Franklin,* 982 F.2d 1342, 1348 (9th Cir.1992) (pollock fishing season had ended, but it was an annual event, and FWS had already announced plans to rely on the same biological opinion the following year, so the controversy was almost certain to be repeated), *opinion amended on denial of rehearing,* 14 F.3d 1324 (C.A.9 1992).

Defendants admit the consultation process was unacceptably attenuated in the present case, but attribute those delays to the unprecedented number of requests for consultation generated by the listings of the spotted owl and marbled murrelet. Defendants also note that on several occasions rapidly unfolding events forced the agencies to reinitiate consultation and issue a revised biological opinion. The FWS biologists were also stretched thin by other demands on their time, which included responding to legal challenges that sought to enjoin timber sales throughout the Pacific Northwest, and helping to prepare Forest Management Plan Option 9 ("Option 9") and other forest management plans. Finally, although public attention and considerable agency resources were devoted to the spotted owl and marbled murrelet, those are just two of the many species for which the FWS biologists are obliged to conduct studies and issue biological opinions.

Defendants have furnished affidavits detailing the steps that have been taken to avoid a repetition of these delays, including hiring more biologists to assist with the production of biological opinions, developing an interagency database, and tiering consultation on specific projects to consultations con-

---

**1.** Although defendants traditionally bore the burden of demonstrating that a case was moot, the Supreme Court's decision in *Lyons* appears to have shifted that burden towards the plaintiff, at least with respect to demonstrating that the controversy is likely to recur. *Sample,* 771 F.2d at 1342–43.

ducted for larger forest planning strategies so the FWS need not reinvent the wheel for each individual consultation. Plaintiffs question whether those measures will be sufficient to prevent future delays, given the growing number of potential candidates for the endangered species list. Nonetheless, there are several factors that lead me to conclude this is not an appropriate instance to invoke the "capable of repetition" exception to the mootness doctrine.

 First, the claims here are not the type that are inherently mooted by the passage of time before review may be had. *Cf. Ackley v. Western Conference of Teamsters,* 958 F.2d 1463, 1469 (9th Cir.1992). Second, defendants have taken significant steps to prevent a repetition of the events leading to this action. *Cf. Id.* Third, plaintiffs' entitlement to relief and the precise nature of that relief may vary depending upon the particular circumstances of the case, including the reasons why the FWS is late in delivering the biological opinions. Fourth, the FWS has stipulated that it is bound by the deadlines plaintiffs propose, so there is little to be gained by declaratory relief. Finally, my own reading of 50 C.F.R. Subpart 402 suggests there is room to argue whether the deadlines described in that Subpart apply to a timber sale.[2] Defendants have indicated that because the BLM has historically treated a bidder on a timber sale contract as a "permit or license applicant", they will not contest that issue here. An agency's interpretation of its own regulations is entitled to substantial deference, *Lyng v. Payne,* 476 U.S. 926, 939, 106 S.Ct. 2333, 2341–42, 90 L.Ed.2d 921 (1986), but the parties may not stipulate to standing, the jurisdiction of this court, or the interpretation of a statute or regulation. Those are matters for this court to decide. Plaintiffs' interpretation of this

regulation may prove to be correct, but I am reluctant to issue what amounts to an advisory opinion when there is no real dispute between the parties. The absence of any real dispute deprives the court of the "concrete adverseness which sharpens the presentation of issues" upon which the courts depend for illumination of difficult questions. *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). The more prudent choice is to hold that question for another day when it is more squarely presented in an adversarial context.

 Plaintiffs also argue that the effects of the challenged delays have not been "completely and irrevocably eradicated", *Luckie v. EPA,* 752 F.2d 454, 459 (9th Cir.1985), because the delays in the consultation process prevented the BLM from awarding the timber sale contracts before President Clinton announced his proposed Option 9, and the latter could further delay or even preclude the contracts from ever being awarded. Assuming that is true, it is still not a redressable injury within the zone of interests which the timetables were intended to protect. Plaintiffs similarly argue that they were injured because the BLM reduced the sale volume after reviewing the biological opinions. However, that injury does not flow from the delay in issuing the biological opinions, but rather the content of those opinions, which is an entirely different set of claims.

### 2. *Failure to Give Notice:*

Plaintiffs have now received their long-sought biological opinions, but are unhappy with the conclusions of those reports. Accordingly, they seek to void the opinions on grounds (a) the opinions were issued late, so the FWS was without jurisdiction to issue an opinion, (b) the FWS failed to use the best

---

**2.** The authorizing statute speaks only of an applicant for a "permit or license". 16 U.S.C. §§ 1532(12), 1536. The regulations expressly distinguish the granting of a "contract" from the granting of a "permit or license". 50 C.F.R. § 402.02 ("Action"). Although the term "Applicant" is arguably given a somewhat broader definition in § 402.02, the regulations often revert to the term "permit or license applicant". *See, e.g.,* 50 C.F.R. §§ 402.01(a), 402.08, 402.11(a), (f) and 402.12(i). Without exploring the legislative his-

tory and timber sale procedures in greater depth than the limited excerpts furnished with the parties' briefs, I cannot determine whether the term "permit or license applicant" is intended to refer to any person proposing an "action" or only to an applicant for a "permit or license", nor can I be certain whether the high bidder on a timber sale contract should be considered an applicant for a "permit or license" for purposes of the ESA and these regulations.

scientific and commercial data available during the consultation period, (c) the FWS failed to discuss its tentative findings with plaintiffs before issuing its draft biological opinion, (d) the FWS failed to give due consideration to plaintiffs' proposed project modifications or mitigation, and (e) the biological opinions relied upon a critical habitat designation that was struck down by Judge Hogan because the FWS had not prepared an Environmental Impact Statement on the affects of that designation. *See Douglas County v. Lujan,* 810 F.Supp. 1470 (D.Or. 1992). Plaintiffs also complain they were not personally given a copy of the biological opinions by the FWS, as plaintiffs contend is required by 50 C.F.R. 402.14(e), but had to wait until they received a copy of the opinions from the BLM.

■ Defendants move to dismiss these claims because plaintiffs failed to file the required 60–day notice of intent to sue. 16 U.S.C. § 1540. The 60–day notice is jurisdictional, and failure to comply with that requirement is an absolute bar to bringing an action under this statute. *See Hallstrom v. Tillamook County,* 493 U.S. 20, 26–28, 110 S.Ct. 304, 308–10, 107 L.Ed.2d 237 (1989) (construing similar provision in RCRA). I therefore have no authority to excuse a failure to comply with the notice requirement even though compliance would almost certainly be a futile act since the FWS has already announced it intends to oppose plaintiffs on the merits.

■ Plaintiffs contend that the notice (dated December 17, 1992) filed in connection with the first group of claims is sufficiently broad to cover the new claims. I disagree. The December 17 notice complained of the FWS's failure to timely issue the biological opinions, and threatened to sue if the FWS didn't promptly release those opinions. The new claims challenge the opinions themselves, and the process by which those opinions were developed. These are separate claims wholly apart from the first group, and require a new notice of intent to sue. Accordingly, these claims should be dismissed without prejudice.[3]

■ The only one of these five claims that was arguably encompassed by the December 17 notice is plaintiffs' contention that the biological opinion is void because the FWS's authority to act expired with the passing of the consultation deadlines. Assuming these deadlines apply here, that contention still lacks merit. Given the absolutist terms in which the ESA has been construed, *see TVA v. Hill,* 437 U.S. at 173, 184–85, 98 S.Ct. at 2291, 2296–97, it would be inappropriate for a court to invalidate a biological opinion, and allow an agency to proceed with a project that the FWS has determined poses a threat to endangered species, merely because the FWS was late in issuing its opinion. *Cf. Sierra Pacific Industries v. Lyng,* 866 F.2d 1099, 1111–1112 (9th Cir.1989) (government agencies ordinarily do not lose jurisdiction to act merely because they fail to comply with statutory time limits) (citing *Brock v. Pierce County,* 476 U.S. 253, 259, 106 S.Ct. 1834, 1838–39, 90 L.Ed.2d 248 (1986)).

■ In any event, invalidation of the biological opinion would not clear the way for the BLM to proceed with these timber sales. The BLM has an independent duty to ensure that any action it authorizes, funds, or carries out does not jeopardize the continued existence of any endangered or threatened species or result in the destruction or adverse modification of critical habitat of such species. 16 U.S.C. § 1536(a)(2). The purpose of consultation is to allow the agency to utilize the expertise of the FWS in assessing the impact of the proposed project and the feasibility of adopting reasonable alternatives. Consultation is not an end in itself, but merely the means to reach a reasoned decision. The BLM cannot ignore the information provided by the FWS merely because the opinion was allegedly delivered late. A decision by the BLM to proceed with these sales in the face of reliable information that the sales will adversely impact protected species would be arbitrary and capricious, and contrary to law. *Hill,* 549 F.2d at 1070. Finally, the BLM has a continuing duty to reinitiate consultation with the FWS if new

---

**3.** Dismissal is mandatory. The court may not stay the action for 60 days while plaintiffs file the required notice. *Hallstrom,* 493 U.S. at 26–28, 110 S.Ct. at 309.

information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered. *Marsh,* 816 F.2d at 1387; 50 C.F.R. § 402.16(b). Again, the BLM could not simply ignore the biological opinion merely because it was late. Defendants are entitled to summary judgment on this claim.

3. *Claims Against the BLM:*

■ Plaintiffs complain that the BLM erred by adjusting the contract price to reflect the value of the timber in 1993 dollars instead of 1990 dollars, which is when the contract was first bid. Defendants argue that this dispute is within the exclusive jurisdiction of the Court of Claims. I agree. *See Murphy Timber Co. v. Turner,* 776 F.Supp. 533, 536 (D.Or.1991) (district court lacks jurisdiction to hear claim for declaration of contract rights against the government). Plaintiffs try to avoid that result by asserting this dispute does not arise under the contract but rather is a remedy for violations of the ESA. However, plaintiffs made no mention of this claim in their notice of intent to sue, so the claim is barred by 16 U.S.C. § 1540. In any event, artful pleading notwithstanding, this case "does not rest on bottom on statutory rights but sounds clearly in contract." *Murphy Timber,* 776 F.Supp. at 537 (internal citation omitted).[4]

■ Next, plaintiffs seek an injunction requiring the BLM to immediately award any sale for which a biological opinion has been issued. The BLM chose to withdraw some of the sales in light of the draft biological opinions. Plaintiffs contend the BLM should have modified the sale instead of canceling it outright. This court has no jurisdiction to compel an agency to proceed with a project the agency no longer desires to pursue. To the extent plaintiffs are asserting a claim for breach of contract or failure to award a contract, that claim must be filed in the Court of Claims. *Id.;* 28 U.S.C. §§ 1346(a)(2) and 1491(a)(3).

■ Plaintiffs also seek a declaration that "defendant BLM has authority to replace lost timber volume within the contract area for purposes of developing reasonable and prudent alternatives." The BLM declined plaintiffs' request on grounds that action would violate agency regulations governing competitive bidding on timber sales. 43 C.F.R. Subparts 5401 and 5402. The complaint identifies the relief plaintiffs seek, but fails to identify any legal basis for granting that relief. Since plaintiffs do not contend the BLM is under any legal obligation to make up the lost volume, this is tantamount to a request for an advisory opinion telling the BLM it has the power to take the requested action if it chooses to do so. Federal courts cannot issue advisory opinions. *Church of Scientology,* —— U.S. at ——, 113 S.Ct. at 449.

In subsequent briefs, plaintiffs suggested that the proposed declaratory relief is an appropriate remedy for defendants' alleged violations of the ESA, particularly the failure to properly consider plaintiffs' proposed reasonable and prudent alternatives. However, I have already determined that this claim must be dismissed for failure to comply with the notice requirements. Alternatively, compensation for lost volume might be a remedy under a contract theory, but 28 U.S.C. § 1491(a)(3) deprives the district courts of jurisdiction over pre-award government contract claims. *J.P. Francis & Associates, Inc. v. United States,* 902 F.2d 740, 742 (9th Cir.1990).

At oral argument, plaintiffs suggested this claim is actually founded upon the Administrative Procedure Act, on the theory that the BLM acted arbitrarily and capriciously by refusing to consider plaintiffs' proposal due to an erroneous interpretation of the agency's regulations. Such a claim would likely fall outside the exclusive jurisdiction of the Court of Claims. *See North Side Lumber Co. v. Block,* 753 F.2d 1482, 1485 (9th Cir.), *cert. denied,* 474 U.S. 919, 106 S.Ct. 248, 88 L.Ed.2d 256 *and cert. denied,* 474 U.S. 931, 106 S.Ct. 265, 88 L.Ed.2d 271 (1985) (if claim

---

4. Plaintiffs' reliance upon *Sierra Pacific Industries,* 866 F.2d 1099, is misplaced. *Sierra Pacific* involved a challenge to the *validity* of regulations implementing a statute, not the agency's application of those regulations to a particular contract.

is "contract-related" but "rested at bottom on statutory rights" then it is not a claim founded upon a contract within the meaning of the Tucker Act, and does not preclude review under the APA, providing the party is not seeking money damages, either directly or indirectly).

 Assuming I have jurisdiction to consider that claim, it nonetheless fails on the merits. An agency's construction of its own regulations is entitled to substantial deference. *Payne,* 476 U.S. at 939, 106 S.Ct. at 2341–42. Plaintiffs have not shown the BLM's interpretation of these regulations is unreasonable.[5] To the extent this claim is founded upon a violation of the APA, defendants are entitled to summary judgment.

### 4. *Motion for Leave to Amend Complaint:*

 Plaintiffs filed an eleventh hour motion seeking leave to file a second amended complaint adding a new claim alleging defendants violated § 318 of the Department of the Interior and Related Agencies Appropriations Act, 1990, Pub.L. No. 101–121, 103 Stat. 701, 745. Once the defendant has filed a responsive pleading, the decision to permit the filing of an amended complaint is committed to the sound discretion of the trial court. Fed.R.Civ.P. 15; *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Plaintiffs' motion was not only untimely but also alleged an entirely new set of grievances regarding the BLM's response to President Clinton's proposed Option 9. The Section 318 claim is really a separate complaint, and should be filed as such.

### CONCLUSION

Plaintiffs' motion (# 13–1) for summary judgment is DENIED. Plaintiffs' motion (# 50–1) for leave to file a second amended complaint is DENIED without prejudice to

refile the Section 318 claim as a separate action. Defendants' motion (# 24–1) to dismiss is GRANTED as to Claims One, Four, Five, Six, and Seven, and also Claim Three to the extent that claim is founded upon either a contract or a violation of the ESA, without prejudice to plaintiffs' right to refile those claims that were dismissed for failure to comply with the notice requirements of 16 U.S.C. § 1540. Defendants' motion (# 24–2) for summary judgment is GRANTED as to Claim Two and also as to Claim Three to the extent that claim challenges the BLM's interpretation of 43 C.F.R. Subparts 5401 and 5402.

---

5. Plaintiffs suggest the BLM has applied its regulations inconsistently, but have failed to refute defendant's explanation that the sales described by plaintiffs were covered by express exclusions within § 5402. Plaintiffs also argue that the Forest Service has adopted a different interpretation of its regulations, but that is a different agency and different regulations. Even if the regulations were identical, there can be more than one reasonable interpretation of a given regulation. Plaintiffs' exhibits also reveal that the Forest Service has adopted detailed rules governing replacement volume sales. The source of those Forest Service rules is unclear, but they are more than a mere restatement or implementation of the policies enumerated in Subparts 5401 and 5402. There is no evidence in the record that suggests the BLM has adopted its own version of these rules.