BIODIVERSITY LEGAL FOUNDATION; Montana Native Plant Society–Flathead Chapter; Washington Native Plant Society–Northeast Chapter; Peter Lesica, an individual; Southwest Center for Biological Diversity; Bonnie Dombrowski, an individual; Maricopa Audubon Society; Huachuca Audubon Society; Utah Environmental Congress; Oregon Natural Desert Association; Oregon Trout; Native Fish Society; Oregon Chapter of Trout Unlimited, Plaintiffs–Appellants–Cross–Appellees,

---

v.

Anne BADGLEY, Regional Director of the U.S. Fish & Wildlife Service, Region 1; Jamie Rappaport–Clark; Gale A. Norton,* Secretary, Department of Interior, Defendants–Appellees–Cross–Appellants.

Nos. 00–35076, 00–35089.

United States Court of Appeals, Ninth Circuit.

Argued March 5, 2001.

Submitted Dec. 28, 2001.

Filed March 21, 2002.

---

* Gale A. Norton is substituted for her predecessor, Bruce Babbitt, as Secretary of Interior.

Fed. R.App. P. 43(c)(2).

Daniel J. Rohlf, and Stephanie M. Parent, Pacific Northwest Environmental Advocacy Center, Seattle, WA, for the plaintiffs-appellants.

M. Alice Thurston, United States Department of Justice, Washington, DC, for the defendants-appellees.

James B. Dougherty, Washington, D.C., for the amicus curiae.

Before: T.G. NELSON, GRABER and RAWLINSON, Circuit Judges.

RAWLINSON, Circuit Judge.

Biodiversity Legal Foundation, several environmental groups, and individuals ("Appellants") appeal the district court's partial grant of summary judgment in favor of Appellees, the Department of Interior and the United States Fish and Wildlife Service ("the Service"). The district court ruled that the Service has discretion under 16 U.S.C. § 1533 (the Endangered Species Act ("ESA")) to make substantial information findings beyond the twelve-month deadline imposed for warranted/not-warranted findings. We reverse and hold that the only way to interpret subsection (b)(3)(A) in harmony with subsection (b)(3)(B) is by limiting the Service's discretion under (b)(3)(A) to the firm deadline imposed by (b)(3)(B).

In its cross-appeal, the Service appeals the district court's denial of the Service's request for additional time within which to make three court-ordered warranted/not-warranted findings in dispute. The district court held that, under the ESA, it lacked equitable discretion to grant relief to allow the government the time requested to make the statutory determinations. We affirm the district court's conclusion and hold that the ESA forecloses the exercise of discretion when the agency misses ESA-imposed deadlines.

FACTUAL BACKGROUND

Appellants sued the Department of Interior and the Service for failing to comply with the listing deadlines set forth in 16 U.S.C. § 1533. The suits emerged in the following manner: On February 23, 1995, Appellants filed a petition to list as an endangered species the Spalding's Catchfly (*Silene spaldingii*). At the time this litigation commenced, the Service had not yet made the initial finding. On July 10, 1995, Appellants petitioned the Service to list the southern California population of the Mountain Yellow Legged Frog (*rana muscosa*) as threatened or endangered. Although the substantial information finding for the frog was issued pursuant to a court order in an unrelated case, the Service had failed to issue a warranted/not-warranted finding by the time this litigation commenced.

In 1997, Appellants petitioned to list the Great Basin Redband Trout (*Oncorhynchus mykiss ssp.*) as threatened or endangered. Although the Service had published the substantial information finding for the Redband Trout, it had yet to issue a warranted/not-warranted finding when this litigation began. In 1998, Appellants petitioned the Service to list the Yellow Billed Cuckoo (*Coccyzus americanus*) as endangered. As with the other species involved in this suit, the Service had yet to act on this petition at the time this litigation com-

menced.[1] Following the decision below, the Service made all the requested listing determinations in accordance with the district court's order.

## STATUTORY FRAMEWORK

The ESA authorizes the Secretary of the Interior to classify species of plants and animals facing extinction as endangered or threatened.[2] 16 U.S.C. § 1533(a). It sets forth procedures the Service is required to follow in making its determinations. 16 U.S.C. § 1533(b). Embracing citizen participation in the listing process, Congress has afforded any "interested person" the opportunity to petition the Service to list a species:

(A) To the maximum extent practicable, within 90 days after receiving the petition ... to add ... or ... remove a species ... the Secretary shall make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted.... [3]

(B) Within 12 months after receiving a petition that is found under subparagraph (A) to present substantial information indicating that the petitioned action may be warranted, the Secretary shall make one of the following findings: (i) The petitioned action is not warranted.... (ii) The petitioned action is warranted.... (iii) The petitioned action is warranted, but ... [precluded].[4]

16 U.S.C. § 1533(b)(3)(A)-(B).

■ Once a petition is filed, the Service has ninety days within which to make an initial determination "[t]o the maximum extent practicable." § 1533(b)(3)(A). If the initial determination is positive, the Service has one year from the date the petition was received to make a final determination. *Ore. Natural Res. Council, Inc. v. Kantor,* 99 F.3d 334, 338–39 (9th Cir.1996). We are not at liberty to revisit that decision. *Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.),* 177 F.3d 774, 782 n. 8 (9th Cir.1999) (holding that a three-judge panel lacks authority to overrule the decision of another panel).

As a result of our decision in *Kantor,* the current state of the law is that the Service has discretion to extend the initial determination beyond ninety days; however, the Service is required to make a final determination on positive petitions within twelve months of receipt. Unfortunately, as a practical matter, if the initial determination has not been completed within twelve months, the final one has not been completed either.

The district court in this case ruled that the initial determination can be made at any time, in accordance with the Service's guidelines. But the final determination on positive petitions must be made within one year of the initial determination. Thus, the Service has the discretion to take three, four, or even five years to make the initial determination. However, if that determination is positive, the Service is already in violation of the twelve-month deadline for the final determination. That is exactly what happened in this case.

---

1. The Service's explanation for the delays is budgetary.

2. The Secretary has delegated the implementing authority to the Service. 50 C.F.R. § 402.01(b) (1986).

3. This "substantial information" determination will be referred to as the initial finding or determination.

4. This "warranted/not-warranted" determination will be referred to as the final determination or the twelve-month finding.

Although we ruled in *Kantor* that the twelve-month deadline is firm, no circuit court has specifically decided whether § 1533(b)(3)(B) places a limit on the discretion provided by § 1533(b)(3)(A). That question is squarely before us now.

## DISCUSSION

### I. *Jurisdiction*

Before we reach the merits of this appeal, we must address the Service's challenge to our jurisdiction. The Service alleges that Appellants' claims are moot because the Service has completed the action requested by Appellants—i.e. decisions to list the four plant and animal species as endangered or threatened. The Service also asserts that Appellants have failed to establish standing.

### A. *Standing*

▮▮▮▮ To satisfy Article III's standing requirement, Appellants must demonstrate: (1) they suffered or will suffer an "injury in fact" that is concrete, particularized, and actual or imminent; (2) the injury is fairly traceable to the Service's challenged action; and (3) the injury is likely, not merely speculative, and will be redressed by a favorable decision. *Cantrell v. City of Long Beach*, 241 F.3d 674, 679 (9th Cir.2001). Standing is determined as of the commencement of litigation. *White v. Lee*, 227 F.3d 1214, 1243 (9th Cir.2000).[5] Because eight of the ten appellants are organizations, they must satisfy three additional prerequisites to sue on behalf of their members: (1) their members must otherwise have had standing to sue on their own behalf; (2) the interests at stake

must be germane to the organizations' purposes; and (3) neither the claim asserted nor the relief requested must require the participation of individual members in the lawsuit. *United Food And Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 553, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996).

The eight organizations and associations have satisfied the prerequisites to bring suit on behalf of their members. The individual members of the organizations have concrete injuries, and any harm resulting from the challenged action will be borne individually. They would therefore otherwise have standing to sue on their own behalf. Additionally, this suit is germane to each organization's purpose. Finally, unlike a claim for money damages, neither the claim asserted nor the relief requested requires the participation of individual members in this lawsuit.

Each organization and association that petitioned on behalf of the Spalding's Catchfly alleged that its staff, members, and supporters derive scientific, aesthetic, and spiritual benefits from the plant's continued existence in its natural habitat. Each organization and association which petitioned on behalf of the Great Basin Redband Trout, the southern population of the Mountain Yellow Legged Frog, and the Yellow Billed Cuckoo also alleged that its staff, members, and supporters derive scientific, aesthetic, and spiritual benefits from the species' continued existence in the wild and from the ecosystems upon which they depend. The individual appellants allege the same interests. Appellants' desire to use, observe, and study the

---

**5.** It is not clear whether the Service alleges that Appellants have to establish standing to bring this appeal. Nonetheless, if it is determined that Appellants had standing at the time this case was filed, "mootness" rather than "standing" becomes the proper inquiry

on appeal. *White*, 227 F.3d at 1243; *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 22, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997). We will discuss mootness later in this opinion.

stated plant and animal species is undeniably a cognizable interest for purposes of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562–63, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Appellants' interests face specific and concrete injury because the Service's failure to list the Spalding's Catchfly, the Great Basin Redband Trout, the southern population of the Mountain Yellow–Legged Frog, and the Yellow–Billed Cuckoo will result in continued threats to their existence.

■ The Service further asserts that Appellants lack standing to challenge delay in the listing program generally. The Service specifically challenges the district court's exercise of its discretion to grant declaratory relief by ruling that a delayed substantial information finding that precludes the Service from complying with the twelve-month deadline, is unlawful.

■ Congress granted federal courts the authority to issue declaratory judgments through the Declaratory Judgment Act:

> In a case of actual controversy within its jurisdiction, [exceptions omitted] ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). The purpose of the Declaratory Judgment Act is to give litigants an early opportunity to resolve federal issues to avoid "the threat of impending litigation." *Seattle Audubon Soc'y v. Moseley*, 80 F.3d 1401, 1405 (9th Cir.1996) (per curiam). The Act was also intended to help defendants, like the Service, who have faced numerous lawsuits, "avoid a

multiplicity of actions by affording an adequate, expedient, and inexpensive means for declaring in one action the rights and obligation[s] of the litigants." *Id.*

■ The district court had jurisdiction to entertain Appellants' request for declaratory relief if there was a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (internal quotation marks and citation omitted). The parties were immersed in a substantial controversy regarding the proper interpretation of the ESA's deadline provisions; they have litigated similar cases before; and there are analogous cases pending in other federal courts. Accordingly, the district court acted within its discretion when it afforded declaratory relief.

## B. *Mootness*

■ As a prerequisite to our exercise of jurisdiction, we must also satisfy ourselves that this case is not moot. *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir.2000), *cert. denied*, 532 U.S. 905, 121 S.Ct. 1228, 149 L.Ed.2d 138 (2001). An actual controversy must exist at all stages of the litigation. *Arizonans for Official English*, 520 U.S. at 45, 117 S.Ct. 1055. When a controversy no longer exists, the case is moot. *Kasza v. Browner*, 133 F.3d 1159, 1172 (9th Cir. 1998). We review mootness, a question of law, de novo. *Tinoqui–Chalola Council of Kitanemuk & Yowlumne Tejon Indians v. United States Dep't. of Energy*, 232 F.3d 1300, 1303 (9th Cir.2000).

Appellants sought two remedies in district court:[6] (1) to compel the Service to make the requested listing determinations;

---

**6.** Appellants also sought to have the Listing Priority Guidance declared invalid. That request has been relinquished on appeal.

**1054**

and (2) to declare that 16 U.S.C. § 1533 requires the Service to make initial listing determinations within twelve months after receiving a petition. In effect, Appellants sought to have the district court declare that the Service's interpretation of 16 U.S.C. § 1533 is erroneous. As ordered, the Service completed all the listing determinations encompassed within Appellants' complaints. Therefore, according to the Service, there is no longer a case or controversy.

The United States Supreme Court has articulated the following test for mootness in the context of a case, like this one, in which a plaintiff seeks declaratory relief. Because the doctrine of mootness is "the doctrine of standing set in a time frame," *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (citation and internal quotation marks omitted), this test is the same as the one we quoted above:

> The question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941).

*Super Tire Eng'g Co. v. McCorkle,* 416 U.S. 115, 122, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974). The Court held that the district court had a duty to decide the merits of the declaratory judgment claim even though the request for an injunction had become moot. *Id.* at 121–22, 94 S.Ct. 1694. We have recently echoed the same theme in *Skysign Int'l Inc. v. City and County of Honolulu,* 276 F.3d 1109, 1114–15 (9th Cir. 2002), noting that the cessation of conduct does not necessarily render a declaratory judgment moot.

■ In this case we have little difficulty concluding that there remains a substantial controversy between parties who have adverse legal interests and that the controversy is of sufficient immediacy and reality to warrant declaratory relief. Appellants have been parties in several other actions in which the Service failed to make either the 90–day or the 12–month finding until after litigation began. They also have pending petitions, and the Service continues to interpret the statutory provisions at issue to allow it to delay action indefinitely. As the district court noted: "Although the species at issue change, these parties have been through the same controversy many times, with the lawsuits appearing to spur the [Service] into action." There is no barrier to our exercise of jurisdiction in this case.[7]

II. *Discretion in Making the Initial Finding*

■ We review a decision to grant or deny summary judgment de novo. *Llamas v. Butte Cmty. Coll. Dist.,* 238 F.3d 1123, 1126 (9th Cir.2001). The Service interprets the time limit for making initial listing determinations under 16 U.S.C. § 1533(b)(3)(A) independently of the one-year limitation imposed in subsection (b)(3)(B). Under the Service's interpretation, it has ninety days "[t]o the maximum extent practicable" to make the initial listing determination under (b)(3)(A); but if it is not practicable to complete the determination within ninety days, the finding may be delayed indefinitely. We disagree with the Service's interpretation.

7. The same analysis applies to the Service's cross-appeal; thus, we have jurisdiction over that issue as well.

■ Although we give deference to an agency's construction of a statutory provision it is charged with administering, *Amer. Fed'n of Gov't Employees v. Fed. Labor Relations Auth.*, 204 F.3d 1272, 1274–75 (9th Cir.2000), we must reject those constructions that are contrary to clear congressional intent or that frustrate the policy Congress sought to implement. *Eisinger v. Fed. Labor Relations Auth.*, 218 F.3d 1097, 1100–01 (9th Cir.2000).

■ It is an elementary canon of construction that an interpretation which gives effect to all sections of a statute is preferred. *Colautti v. Franklin*, 439 U.S. 379, 392, 99 S.Ct. 675, 58 L.Ed.2d 596, (1979) (limited by *Webster v. Reprod. Health Servs.*, 492 U.S. 490, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989)). The Service's interpretation would render subsection (b)(3)(B) inoperative. The only way to give effect to *both* deadline provisions is to apply the twelve-month deadline to both the initial and final determinations.

Additionally, "Congress from the outset recognized that timeliness in the listing process is essential." *Ctr. for Biological Diversity v. Norton*, 254 F.3d 833, 839 (9th Cir.2001). "During subsequent revisions of the ESA, Congress expressed particular concern for species that had languished for years in status reviews." *Id.* at 839–40 (citation and internal quotation marks omitted). While the Service asks us to embrace an interpretation of the ESA in which listings could admittedly take years, it is apparent that Congress passed the 1982 amendments for the very purpose of curtailing the process.

Subsection (b)(3)(B) imposes a firm twelve-month deadline for making final determinations. *Kantor*, 99 F.3d at 338–39. If the final determination must be made within twelve months, the only logical conclusion is that the initial one must be made within that time as well. Our conclusion is not inconsistent with the Tenth Circuit's decision in *Biodiversity Legal Found. v. Babbitt*, 146 F.3d 1249 (10th Cir.1998). In that case, Biodiversity Legal Foundation ("Biodiversity"), one of the parties to this action, asserted that the phrase "maximum extent practicable" places a limit on the Service's discretion. *Id.* at 1253. Specifically, Biodiversity argued that the LPG could not be used to extend initial listing determinations beyond ninety days. *Id.* It asserted that the Service could exceed the ninety day limitation only if making a listing determination within ninety days "was impracticable." *Id.*

■ The Tenth Circuit ruled that "[t]he 1997 LPG's prioritization ... is consistent with the language and legislative history of section 4(b)(3)(A)." *Id.* at 1255. However, the court expressly limited its review "to assessing whether the 1997 LPG is a reasonable interpretation of section 4(b)(3)(A) in light of the entire statutory scheme." *Id.* at 1255–56. The Tenth Circuit never addressed the issue whether the Service's discretion under subsection (b)(3)(A) was limited by subsection (b)(3)(B). That is the issue we now decide. We rule that Congress intended to limit the flexible deadline governing the initial listing determination by enacting the firm deadline for making the final determination. Both determinations must be made within one year. *See Norton*, 254 F.3d at 838–40.

### III. Cross–Appeal: District Court's Authority

The fourth and fifth issues presented in this appeal are: whether the district court erred in determining that it had to compel the Service to act when the Service failed to meet the ESA deadline; and whether the Court is to consider the agency's prioritization of its mandatory duties with statutorily imposed deadlines in determining

whether the action is "unlawfully withheld" or "unreasonably delayed."

## A. *Proceedings Below*

Appellants brought this claim under both the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, and the Endangered Species Act's citizen suit provision, 16 U.S.C. § 1540(c) & (g). Persuaded by the Tenth Circuit's ruling in *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1187 (10th Cir.1999), the district court implicitly held that the grant of injunctive relief was authorized under the judicial review sections of the APA. The district court adopted the following *Forest Guardians* holdings: (1) "when the Secretary fails to comply with a statutorily imposed absolute deadline, it has unlawfully withheld agency action"; and (2) the APA "requires the court to issue an injunction when the Secretary misses deadlines under the ESA." *See id.* at 1191. The district court then issued an injunction requiring the Service to make the requested final determinations.

## B. *Whether the District Court Committed Error by Ruling that It Was Compelled to Grant Injunctive Relief to Appellants.*

 The Service asserts that the district court committed error by ruling that it lacked discretion to refrain from granting injunctive relief. Although we review the district court's decision to grant a permanent injunction for an abuse of discretion, *Walters v. Reno*, 145 F.3d 1032,

1047 (9th Cir.1998), we review the rulings of law relied upon by the district court in awarding injunctive relief de novo. *Hilao v. Estate of Marcos*, 95 F.3d 848, 851 (9th Cir.1996).

The APA provides the judicial standard of review in this case. *Envtl. Prot. Info. Ctr. v. Simpson Timber Co.*, 255 F.3d 1073, 1078 (9th Cir.2001). "Under the APA,[8] a court may set aside an agency action if the court determines that action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or without observance of procedure required by law." *Id.* (citations and internal quotation marks omitted).

As discussed above, Congress imposed a twelve-month deadline for final determinations under the ESA. "Congress intended the petitioning process to interrupt [ ] the department's priority system by requiring immediate review." *Norton*, 254 F.3d at 840 (citation, internal quotation marks and emphasis omitted). The Service's failure to comply with the twelve-month deadline is not in accordance with the ESA, the governing law.[9]

 Appellees correctly assert that a statutory violation does not always lead to the automatic issuance of an injunction. *See Weinberger v. Romero–Barcelo*, 456 U.S. 305, 313, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). However, a review of Supreme Court precedent reveals that, when federal statutes are violated, the test for determining if equitable relief is appropriate is whether an injunction is necessary to ef-

---

8. 16 U.S.C. 1540(g)(1) provides: "[t]he district courts shall have jurisdiction ... to enforce any such provision or regulation, or to order the Secretary to perform such act or duty."

9. The Service urges us to apply the TRAC factors developed in *Telecommunications Research & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C.Cir.1984), and considered by us in *Brow-*

*er v. Evans*, 257 F.3d 1058, 1068 (9th Cir. 2001). However, in *Brower*, we were considering whether there was an unreasonable delay in the absence of a firm deadline. *Id.* In this case, Congress has specifically provided a deadline for performance by the Service, so no balancing of factors is required or permitted.

fectuate the congressional purpose behind the statute. *See TVA v. Hill,* 437 U.S. 153, 194, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978).

In *TVA,* the Supreme Court examined a violation of Section 7 of the ESA and did not balance the equities. *Id.* at 193–95, 98 S.Ct. 2279. Instead, the Court ruled that effectuating Congress' clear intent required issuance of an injunction, regardless of the equities involved. *Id.* Similarly, in *Sierra Club v. Marsh,* 816 F.2d 1376, 1383 (9th Cir.1987), we noted:

> In Congress's view, projects that jeopardized the continued existence of endangered species threatened incalculable harm: accordingly, it decided that the balance of hardships and the public interest tip heavily in favor of endangered species. We may not use equity's scales to strike a different balance.

*Id.* (citation omitted).

While neither this court nor the Supreme Court has yet ruled that an injunction must issue when the Service fails to comply with Section 4 of the ESA, as it has for violations of Section 7, Congress' purpose for passing the ESA applies to both provisions. Regardless whether the Service failed to comply with Section 7 or Section 4 of the ESA:

> Congress has established procedures to further its policy of protecting endangered species. The substantive and procedural provisions of the ESA are the means determined by Congress to assure adequate protection. Only by requiring substantial compliance with the act's procedures can we effectuate the intent of the legislature.

*Id.* at 1384.

In *TVA,* the Supreme Court held that the clear objectives and language of Congress in passing the ESA removed the traditional discretion of courts in balancing the equities before awarding injunctive re-

lief. "Congress has spoken in the plainest of words, making it abundantly clear that the balance [of equities] has been struck in favor of affording endangered species the highest of priorities." *TVA,* 437 U.S. at 194, 98 S.Ct. 2279. Subsequent Supreme Court cases reinforced the holding of *TVA* and solidified the rule that, in the context of the ESA, "Congress [has] foreclosed the exercise of the usual discretion possessed by a court of equity." *Weinberger,* 456 U.S. at 313, 102 S.Ct. 1798; *see also Amoco Prod. Co. v. Village of Gambell, Alaska.,* 480 U.S. 531, 543 n. 9, 544–45, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987).

## CONCLUSION

For the preceding reasons, we hold that both the initial finding and the final determination must be completed within twelve months of the date the petition is received. The Service's failure to complete the listing determinations within the mandated time frame compelled the court to grant injunctive relief. The court had no discretion to consider the Service's stated priorities.

We REVERSE the district court's grant of partial summary judgment in favor of Appellees, and hold that the Service does not have discretion under 16 U.S.C. § 1533 to make substantial information findings beyond the twelve-month deadline imposed for warranted/not-warranted findings. We AFFIRM the district court's denial of the Service's request for additional time within which to make the warranted/not-warranted findings in dispute. The exercise of discretion is foreclosed when statutorily imposed deadlines are not met.

REVERSED IN PART AND AFFIRMED IN PART.

Appellants are awarded costs on appeal.